Case 39.—ACTION BY JOHN T. OVERTON AND OTHERS
AGAINST JOSEPH OVERTON AND OTHERS TO REMOVE
CLOUD ON LAND TITLE.—Sept. 21.

## Overton, &c. v. Overton, &c.

Appeal from Harlan Circuit Court.

M. J. Moss, Circuit Judge.

Judgment for Plaintiffs.   Defendants appeal.   Reversed.

1. Bastards—Capacity to Inherit.—Under Gen. St. c. 31, Sec. 5,
   providing that a bastard shall be capable of inheriting and
   transmitting any inheritance on the part of, or to the mother,
   and bastards of the same mother shall be capable of inherit-
   ing and transmitting an inheritance on the part of each other,
   as if such bastards were born in lawful wedlock, a bastard
   may not inherit from his legitimate half-brother, their mother
   having predeceased him.
2. Parties—One Suing on Behalf of All Interested.—Under Civ.
   Code Prac. Sec. 25, providing that if the question involve a
   common interest of many, one may sue for the benefit of all,
   the one suing having no interest may not prosecute the action
   for others interested, but not named as parties, though the
   action purports to be on behalf of the one suing and all others
   interested.
3. Quieting Title—Clouds—Evidence of Heirship—Evidence in an
   action to remove a cloud on title held to show that the patentee
   of land, title from whom, through a deed from his son, exe-
   cuted after his death, was claimed by defendants, left no child
   surviving him.
4. Wills—Probate—Effect of Judgment on Appeal.—The judgment
   of the circuit court on appeal under Ky. St. 1903, Sec. 4850
   from the judgment of a county court, admitting to probate,
   under section 4854, a will devising real estate in the State, and
   probated in the chancery court of H. county in another state,
   which adjudges that the decree of the H. chancery court
   offered as a supplied last will, has neither been proven nor
   probated, so as to be a valid will of real estate, and that,
   therefore, the probate of the alleged last will by the county
   court be, and the same is, set aside and held for naught,

leaves the will as if it had not been probated in the county court, so that title to land in the State cannot be claimed under it. ·

5. Adverse Possession—Continuity.—There is not such continuity as .will give· title by adverse possession where persons live on and cultivate, at different terms and for short periods only, small portions of the land.

6. Same—Paying Taxes.—The mere payment of taxes will not give title by adverse possession.

H. C. CLAY, ISHAM G. LeBOW and H. F. COLEMAN for appellants.

POINTS AND AUTHORITIES CITED.

1. Plaintiffs suing for themselves and others.   (Code Sec. 25.) (Story's Eq. Pl. Sec. 94, 97.)

a. Petition and Summons must state names of parties. (Code Sec. 110.) (Stillwell v. Carpenter, 2 Abb. N. Cas. (N. Y.) 241.)

b. Caption must state that suit is on behalf of others. (Abbots Forms of Pl. Vol. 1. p. 15; Whitney v. Mayo, 15 Ill. 255; Packard v Board of Co. Com'r. 2 Colo., 338; Wood v. Draper, 24 Barb., 195; Smith v. Swormstedt, 18 How. 288; Brown v. Robertson, 18 How. 480; Leigh v. Thomas, 2 Ves. Sen. 312; 'Baldwin v. Lawrence, 2 Sim. and Stu. 18; Douglas v. Hasfall, Id. 184; Ling v. Young, Id. 385.

e. Order making parties necessary. (Hendrix v. Money, 64 Ky. 308; Oswald v. Morris, 92 Ky. 48.)

d. Parties must be sufficient to represent the rights of all. (McArthur v. Scott, 113 U. S. 395; Lancaster v. Thompson, 5 Madd. 4, 13; Carey v. Brown, 58 Cal., 180; Calvert on parties, 44, 169; Smith v. Williams, 116 Mass. 512.)

e. Same person cannot be both plaintiff and defendant. (Maxwell on Code, Pl. p. 47; Dicey on Parties, Mar. p. 65; Brown v. Brown, 86 Tenn. 316; Thomas v. Thomas, 3 Litt. 9; Allen v. Gray, 1 Mon. 98; Gatewood v. Lyle, 5 Mon. 6; Byrne v. Byrne, 94 Cal., 579; Eastman v. Wright, 6 Pick., 316.)

f. Rule Applies to any case, where there is an adverse interest. (Parsons v. Lyman, Blatchf, 433.)

2. Amendments. (Code Sec. 134. Enc. Pl. & Pr. Vol. 1, p. 472.)

3. Former Adjudication.

a. Jurisdiction must be plead. (Dailey v. Sharkey, 28 Mo. App. 518; Clark v. Adm'r v. Stroud, 1 Swan., 274.)

b. Prior purchasers not bound by judgment. (Sutor v. Miles, 41 Ky. 491.)

c. Who are privies. (Owingsville & Mt. S. T. R. R. Co. v. Hamilton, 53 S. W. Rep. (Ky.) 6.)

d. The parties must be the same. (Loftis v. Marshall, 134 Cali., 394; Morison v. Clark, 89 Me. 104; Linn v. Stout, 44 Minn. 110; Jones v. Vert, 121 Ind. 140.)

e. Subject matter must be the same, and it is not every issue that is material. (McDonald v. Bear. River & Co. 15 Cal., 145; Kidd v. Land Id., 161; Estate of Freund, 134 Cali., 335; Cananaugh v. Buehler, 120 Pa. St. 457; Houk v. Kerfoot, 99 Va., 661; Watts v. Watts, 160 Mass., 464; Dickerson v. Hays, 31 Conn., 417, 426; Garfield v. Plumber, 175 Ill., 523; Smith v. Roundtree, 185 Ill., 223; Ryan v. Potwin, 62 Ill., App., 140.)

f. Cause must be tried on the merits. (Pepper v. Donnelly, 87 Ky. 262; Yankee v. Sweeny, 85 Ky. 55; Bitzer v. O'Bryan, 107 Ky. 598.)

g. Must be a final judgment. (Nickell v. Fallen, 23 S. W. Rep. 366; Lumber Co. v. Mickey, 89 Mo. App. 287.)

h. Matters not adjudicated no estoppel. (Houser v. Ruffner, 18 W. Va. 250; Craine v. Edwards, 92 Ky., 113.)

i. Court had no jurisdiction. (Kentucky Stat. Sec. 1057, and 966.)

j. Where lower court has no jurisdiction, Appellate court ·has none. (Linton v. Mogal, 98, Pa., St., 459; Shaw v. Squires, 153 Pa., St., 150; Waters v. Walker, 17 S. W. Rep. 1085; Able v. Bloomfield, 6 Tex., 263; Gormly v. McIntosh, 22 Barb. 273; Ball v. Biggam, 43 Kans., 327; Plunkett v. Evans, 50 N. W. Rep. 962; Cooban v. Bryant, 36 Wis., 699; Arnegaard v. Arnegaard, 7, N. Dak., 501; Stewart v. Lohr, 1 Wash. St. 341; 25 Pac. Rep. 457; Stephens v. Boswell, 25 Ky., 29; Burbage v. Squires, 60 Ky., 77; Baker v. Chisholm, 3 Tex., 157.)

k. Consent cannot confer jurisdiction nor can the right to object be waived. (Yon v. Baldwin, 76 Ga., 769; Mercier v. Chace, 91 Mass., 243; Arnegaard v. Arnegaard, 7 N. Dak., 501; Springer v. Shavender, 118 N. C., 49, 52; School Trustees v. Stocker, 13 N. J., 116; Dodd v. Una, 40 N. J. Eq., 672; Munday v. Vail, 5 Vroom 422; Flieshman v. Walker, 91 Ill. 321; Doctor v. Hartman, 74 Ind., 222; Abernathy v. Moore, 83 Mo., 69; Brown v. Woody, 64 Mo., 547; Klemstenber v. Schumacher, 35 Wis., 120; Naxro v. Cragin, 3 Dillon 474; Wildman v. Rider, 23 Conn., 172; Swigley v. Dickson, 2 Tex., 192; Benford v. Daniels, 20 Ala., 445; Mabry v. Dickens, 31 Ala., 243; Ginn v. Rogers, 9 Ill., 134; Moore v. Bolin, 5 Ill. App. 556; Sternberg v. Strauss, 44 Ill. App. 147; Davis v. Davis, 3 Ind., 160; Spear v. Carter, 1 Mich., 20.)

l. Without jurisdiction judgment is void. (Springer v. Shavender, 118 N. C., 49; Wildman v. Rider, 23 Conn., 172; Anderson

v. Cave, 49 S. C., 505; Kopf v. Huchins, 11 Tex. Civ. App., 86; Thaxton v. Smith, 38 S. W. Rep., 827; Deshon v. Leffler, 7 Mo. App., 595; Gage v. Hill, 43 Barb., 47; Equitable Trust Co. v. Fisher, 106, Ill., 198; Walmsley v. Robinson, 28 La. Am., 793; Huyghr v. Brinkman, 34 La. Ann., 1180; Mercier v Chace, 91 Mass. (9 Allen) 243.)

4. Laches. (Story's Eq. Pl. Sec. 813.)

5. Defendants' Record Title.

a. On appeal in will cases, Circuit Court can only remand case to County Court for orders. (Mendenhall v. Tungate, 95 Ky., 214.)

b. Order of County Court conclusive. (Kentucky Stat. Sec. 4852; Whalen v. Nesbit, 95 Ky., 464.)

6. Exceptions to Depositions.

a. Exhibit "John T. Overton" incompetent. (E. S. Bonnie & Co. v. Perry's Trustee, 78 S. W. Rep. (Ky.) 210.)

b. "Collateral Heirs" or "nearest of kin," conclusion of law. (Bradford v. Erwin, 34 N. C. (12 I. red) 292; Kerlee v. Corpening, 97 N. C., 334; Speed v. Brooks, 30 Ky. 119.)

c. Relationship of the declarant with the family must be established by proof independent of the declaration. (Taylor on Evidence, Sec. 576; Wharton on Evidence, Sec. 201, 218; Blackburn v. Crawford, 3 Wall. 187; Fulkerson v. Holmes, 117 U. S. 397; Monkton v. Atty. Gen., 2 Russ. & Myln. 147, 156; Atty. Gen. v. Koehler, 9 H. L. Cas. 653, 660; Rex v. All Saints, 7 B. & C. 785, 789; Jennings v. Webb, 8 App. Cas. (D. C.) 43; Anderson v. Smith, 2 Mackey (D. C.) 275; Green v. Norment, 5 Mackey (D. C.) 80; Thompson v. Wolf, 8 Ore., 463; Jackson v. Jackson, 30 Atl. Rep. 755; In re Robb, 37 S. C. 33; Young v. Schulenberg, 165 N. Y., 388; Lawrence v. Atty. Gen. 89 Mich., 160; Green v. Almand, 111 Ga., 736.)

e. The declarant must be legally related. (Taylor on Evidence, Sec. 571, 576, 579, 581; Wharton on Evidence, Sec. 202; Greenleaf on Evidence, Vol. 1, Sec. 103; Phillips on Evidence, Vol. 3, p. 495; Rice on Evidence, p. 416; Jackson v. Browner, 18 Johns., 38; Gregory v. Baugh, 4 Rand. (Va.) 617; Jones v. Letcher, 13 B. M., 371; Dupoyster v. Gagani, 84 Ky., 409.)

f. Hearsay is never admissible to establish an unlawful relationship. (Flora v. Anderson, 75 Fed. Rep. 233.)

g. The words "legally related" does not include bastards. (Crispini v. Doglioni, 3 Swab. & Tr., 44; Flora V. Anderson, 75 Fed. Rep. 217.)

h. Declarations made post litam motam not admissible. (In re Robb, 37 S. C., 33; Young v. Schulenberg, 165 N. Y., 388; De-

Haven v. De Haven, 77 Ind., 237; Emerson v. White, 29 N. H., 482; Chapman v. Chapman, 2 Conn., 348.)

i. Name of declarant must be given. (Chapman v. Chapman, 2. Conn., 348.)

j. General repute in the neighborhood is not competent evidence for relationshrip. (Elder v. State, 123 Ala., 38; In re Heaton 135 Cal., 385; Greenwood v. Spiller, 3 Ill., 502; Metheny v. Bohn, 160 Ill., 263; DeHaven v. DeHaven, 77 Ind., 236; Ross v. Loomis, 64 Iowa, 432; Watson v. Richardson, 110 Iowa, 690; In re Hurlburt, 68 Vt., 366.)

k. Depositions of plaintiffs taken after other witnesses testifying is incompetent. (Code Sec. 606 Sub Sec. 3.)

l. Evidence not sufficient to support judgment. (Tyler on Ejectment, and Adverse Enjoyment, p. 483; Hubback on Succession, 199; Sprigg v. Moale, 28 Md., 504; Richards v. Richards, 15 East 293.)

m. No evidence John Taylor died intestate. (Ironton Fire Brick Co. v. Tucker, 82 S. W. Rep. (Ky.) 241.)

n. Presumption that all married people have issue. (Lawson's Presumptive Evidence, p. 249; Sprigg v. Moale, 28 Md., 504; Hays v. Tribble, 42 Ky., 108; Faulkners' Adm'r v. Williman, 16 S. W. Rep. (Ky.) 352.)

o. Weight to be given the testimony. (Crouch v. Hooper, 16 Beav., 182; Johnson v. Todd, 5 Beav., 599; Sprigg v. Moale, 28 Md., 504.)

p. Depositions cannot be used in favor of person not a party when they were taken. (Kerr v. Wilson, 8 Bush., 129.)

q. Plaintiffs must prove possession. (Kentucky Stat. Sec. 11; Goff v. Lowe; 80 S. W. Rep. (Ky.) 219; Floyd v. L. & N. R. R. Co. Co., 80 S. W. Rep. (Ky.) 204.)

r. Statute in force in 1873-74. ( General Statutes, p. 370; Stanton's Rev. Stat. Vol. 1, page 421.)

s. Construction of this Statute. (Stevenson's Heirs v. Sullivant, 5 Wheat., 207; Scroggin v. Allan, 2 Dana, 363; Stover v. Boswell, 3 Dana, 234; Remington v. Lewis, 8 B. M., 606; Allen v. Ramsay, 1 Met., 635; Berry v. Owens, 5 Bush, 452; Jackson v. Jackson, 78 Ky., 390; Croan v. Phelps, 94 Ky., 213.)

W. F. HALL and GREENE & VANWINKLE for appellees.

POINTS AND AUTHORITIES CITED.

1. Allegations necessary to show title. (Ky. Statutes, Sec. 11; Stephen on Pleading, Page 304; Ky. Statutes, Sec. 1393; L. P. Canal Co., v. Murphey, 9 Bush, 522; R. L. & T. P. R. R. Co. v. Rogers, 7 Bush 535; Stivers v. Baker, 37 Ky. 509.)

Overton, &c. v. Overton, &c.

2. Specific allegations of title control general. (Enc., Pldg. & Pr. Vol. 21, p. 725.)

3. Demurrer will lie if specific facts do not state cause of action. (Enc. Pldg. & Pr. Vol. 17, p. 329; Greenville v. Seybolt, 82, Cal., 7.)

4. Who can sue on behalf of others. (Code Sec. 25.)

5. Statute in force in 1874. (Revised Statutes Page 280; General Statutes, Page 370.)

6. Construction of this statute. (Groan v. Phelps, 94 Ky., 213; Jackson v. Jackson, 78 Ky., 390; Berry v. Owens, U. Bush, 452; Allen v. Ramsey, 1 Met., 635; Remington v. Lewis, 8 B. M., 606; Stover v. Boswell, 3 Dana, 234, Scroggins v. Allen, 2 Dana, 363.)

7. Competency exhibit to J. T. Overton's Deposition. (Owings v. Shannon, 1 Marshall 188; Calvert v. Fitzgerald, Litt. Sel. cases, 388; Ray et al v. Walton, 2 Marsh, 72; Key etc. v. Lynn, 4 Litt., 340; Elliott Ev. Vol. 2 Sec. 874; Wigmore Ev. Vol. 1 Secs. 734 & 738.)

8. Pedigree from hearsay. (Elliott Ev. Vol. 1 Sec. 380 & 381; Wise v. Wynn, 42 Am. R. 381.)

9. Presumption from similarity of names. (Washburn Real Property p. 143 Sec. 488; Gates v. Loftus, 3 A. K. Marsh., 204.)

OPINION OF COURT BY JOHN D. CARROLL, COMMISSIONER—Reversing.

This action involves the title to 4,000 acres of land in Harlan county. The controversy between appellants and appellees concerning its ownership, grows cut of the following state of facts: In 1845 there was issued to John Taylor a patent for this land, and in 1874 he died in the State of Tennessee the owner of the land. During the period of his ownership, the land was considered of trifling value, and it does not appear that any person was in actual possession of it, or exercised any particular acts of ownership over it, but in 1888,, Joe Overton, one of the appellants, for the recited consideration of $1,050 in cash, procured one, William Taylor, to make him a deed to this land. This deed was recorded in Harlan county soon after its execution, and shortly thereafter Overton undertook to place tenants in possession of the

land and paid taxes on it from the time of his pur-
chase until the institution of this action.   The deed
to Overton does not state what relation, if any, the
grantor, William Taylor, was to John Taylor, the
patentee, nor does it disclose how or under what
claim of title the grantor was the owner of the land;
but it is the contention of Overton that William Tay-
lor was the only child and heir at law of John Taylor,
the patentee, and that upon the death of John Taylor,
William Taylor, as his heir, inherited this tract of
land, and, therefore, had the right to convey it to him.
In 1897, Elizabeth Berry, brought a suit in the chan-
cery court of Hancock county, Tenn.—the county in
which John Taylor died—setting up that about 1872
he made a will devising all of his property, including
his lands in Kentucky, to her; that the will was duly
executed and was placed in the hands of N. B. Over-
ton, for the purpose of preserving it until the death of
the testator, when it was to be probated; that the will
had never been probated, and was either lost or de-
stroyed; that she learned that a William Taylor was
asserting title to the land as the son of John Taylor;
and she prayed that the court establish the will of
John Taylor and certify the same to the county court
of Hancock county, Tenn., for probate, and asked for
a warning order against William Taylor, whose resi-
dence was alleged to be unknown, as well as against
any other heirs of John Taylor.   In due time an order
was made in the chancery court, under the Tennessee
practice, taking for confessed the allegations of the
petition; but soon afterwards Joseph Overton filed his
petition in the case, averring that he was the owner of
the land by virtue of his purchase of it from William
Taylor, in 1888, and he asked that the judgment by
default be set aside, and he be allowed to file his
answer and assert his title to the land in Kentucky.
This was permitted by the court, and his answer filed,
denying that any will was made, or that if one was

made, Taylor was incompetent at the time of its exe-
cution.   He set up his purchase of the land from Tay-
lor, averred that he had been in possession of it under
his purchase from the date thereof, and asked that
the petition of Elizabeth Berry be dismissed.   The
depositions of several witnesses were taken in his
proceeding, and in October, 1897, an agreed judgment
was entered in the action, establishing as the will of
John Taylor a paper devising to Elizabeth Berry all
of his estate.   When this agreed judgment was en-
tered, Overton, Mrs. Berry and her attorneys, exe-
cuted to each other deeds, under which there was con-
veyed to Overton about two-thirds of this land, and to
Mrs. Berry and her attorneys, the remainder of it.
These deeds were put to record in Harlan county, and
a copy of the will, established by the chancery court
of Tennessee, and admitted to probate in the county
court of that county, was presented for probate before
the county judge of Harlan county, and in February,
1898, an order was made by the Harlan county court
setting out, in substance, that the paper offered for
probate as the last will of John Taylor, was duly and
properly certified and proven to have been executed
in such a way as to be a valid will of the lands in this
Commonwealth, and the copy was admitted to probate,
and ordered to be recorded as a valid will of real
estate in this Commonwealth.   In June, 1900, the ap-
pellees in this appeal in behalf of themselves and the
other heirs at law of John Taylor, appealed to the
Harlan circuit court from the order of the county
court, admitting to probate the paper offered as the
last will of John Taylor.  In the written statement filed
by them, they charge that John Taylor died intestate;
that he did not leave any child or children or any
direct descendants; that the appellants were his heirs
at law, as the descendants of his brothers and sisters
and his half-brother and half-sister, and they asked
to be allowed to contest the will for themselves and

on behalf of all the heirs of John Taylor. To this appeal the devisee, Elizabeth Berry, entered her appearance and filed her answer, in which she charged that James Overton, John Overton, and Rebecca Overton, whom appellants claim were the half-brothers and half-sister of John Taylor, were not related to him in any legitimate degree, that if they were of kin to him at all, their father, while living with his wife, engaged in illicit intercourse with John Taylor's mother, and as a result of their cohabitation John Taylor was begotten and born out of lawful wedlock. To this answer the appellants filed a reply, reiterating the statement that John Taylor died intestate, leaving no children; that his mother, after the death of his father, gave birth to three illegitimate children— James Overton, John Overton, and Rebecca Overton; and that appellants were the descendants of these Overton children. They also alleged that the will controversy in Tennessee between Elizabeth Berry and Joseph Overton was a fraudulent scheme concocted between them, for the purpose of establishing a paper as the last will of John Taylor, to deprive his rightful heirs of the land in controversy. Pending this proceeding in the Harlan circuit court, Elizabeth Berry died, and the action was revived against her heirs. A large quantity of evidence was taken by both parties to this controversy, and in 1903, the appellants moved the court to strike from the record the alleged will and transcript of proceedings in the chancery court of Tennessee, and the order probating the will, made by the Harlan county court, as well as the probate proceedings of the Hancock county (Tenn.) court.

The Harlan circuit court in disposing of this motion entered the following judgment: "This cause having been submitted to the court on the written motion of appellants to strike from the record and files herein, the transcript of the proceedings in the chancery court of Hancock county, Tenn., to supply the alleged last

will of John Taylor, deceased, in an action wherein
Elizabeth Berry was complainant and William Taylor
and the unknown heirs of John Taylor were defend-
ants. The decree of said court in said action and the
alleged proceedings thereon, in the Hancock county
court of Tennessee, and the copy thereof filed in the
Harlan county court of Kentucky, and all of which has
been filed in an action, for the reason set out in said
motion, and the court having considered said motion,
and having heard the argument of the counsel, and
being advised, it is ordered by the court that said
transcript of said proceedings in Hancock county,
Tenn., and the copy thereof filed in the Harlan county
court of Kentucky, be and are, stricken from the
record herein, to which ruling of the court Rachael
Berry, etc., appellees, except, and the counter motion
of appellees to quash the said motion of appellants
having been considered by the court is overruled,
to which ruling of the court the appellees except, and
the court being sufficiently advised, it is adjudged by
the court the decree of the Hancock chancery court.
on file herein and offered as the supplied last will and
testament of the said John Taylor, has neither been
proven nor probated, so as to be a valid will of real
estate and to pass the title thereto, under the laws of
this commonwealth. It is therefore adjudged that
the probate of the alleged last will, by the Harlan
county court be, and the same is, set aside and held
for naught. It is further adjudged by the court
that appellants recover of appellees their costs
herein expended, for which they may have execu-
tion. To all of which the appellees object and
except, and pray an appeal to the Court of Ap-
peals, which is granted." Afterwards, in due time,
the appellants filed their motion and grounds for a
new trial, and the same having been overruled, they
were given until a day of the next term to pre-
pare and present their bill of exceptions. No appeal

was prosecuted from this judgment, nor has it been in any way modified or vacated. After the rendition of the judgment by the Harlan Circiut Court in the will proceeding, and in June 1903, the appellees herein, averring that they were the legal heirs of John Taylor, who died intestate, brought this suit in behalf of themselves and all the other heirs of John Taylor (who were estimated to number about 500) against the appellants, who are Joseph Overton, the vendee of William Taylor, under the deed before mentioned, and the heirs at law of Elizabeth Berry, and the attorneys for Elizabeth Berry, to whom deeds were made in the settlement of the will controversy in the Tennessee chancery court. They alleged that the defendants, now appellants, were asserting title to the land by virtue of the deeds made in the settlement of the will case in Tennessee, and the deed from Taylor to Overton and asked that their title to the land be quieted. Afterwards they filed an amended petition, setting out specifically the conveyances under which the defendants, now appellants, claim title to the land; that these conveyances were fraudulent and void and were a cloud upon their title, they also averred in replies filed, that the judgment of the Harlan circuit court in the will case was a bar to the assertion by the defendants of any further title to the land in controversy, and that it was a final adjudication of their ownership of it. The court required them to elect whether they would prosecute the action to quiet their title or to remove the cloud from it, and they elected to prosecute the action to remove a cloud from their title. They were also permitted by the court to prosecute the action, not only in behalf of themselves, but for and on behalf of all the other heirs of John Taylor. Evidence was taken by both parties to this controversy, the record in the will proceedings in the Harlan circuit court, which contained a record of the proceedings in the chancery court of Tennessee, was made a part of the evidence in this action, and permit-

ted to be read as evidence for the plaintiffs, now appellees, over the objection of the defendants, now appellants. The case coming on for trial, the court adjudged the plaintiffs, now appellees and the other heirs of John Taylor, deceased, for whom they prosecuted the action, to be the owners of the land, and the deeds heretofore mentioned conveying said land to the parties, now appellants, were canceled and held for naught. From that judgment this appeal is prosecuted.

Several grounds for reversal are relied upon by appellants, among them being alleged error of the court in prmitting the appellees to prosecute an action for the benefit of all the heirs of John Taylor, deceased; that the petition did not state a cause of action; that it being conceded that the heirs of Elizabeth Berry, who were the appellants, are also heirs at law of John Taylor, and resisting the claims of the appellees, that appellees ought not to be permitted to prosecute the action for their benefit against them; that the court erred in permitting the amended petition changing the cause of action to be filed, that the judgment of the Harlan court in the will case did not estop them from asserting their title and ownership to the land; that they have shown themselves entitled to it by adverse possession; that appellants by their laches have denied themselves the right to prosecute the action; that incompetent evidence was admitted by the court; that under the statute in force when John Taylor died, the appellants were not his heirs, at law, as their ancestors James, John and Rebecca Overton under whom they claim, were illegitimate children. In the petition filed by appellees 10 persons are named as plaintiffs, and it is alleged that these 10 persons are the descendants of John Overton, who was a half-brother of John Tay-Taylor, and for and on behalf of themselves and the other heirs at law of John Taylor, they prosecuted the action against the appellants. The defendants to this

action, now appellants, filed separate answers, denying
that the persons named as plaintiffs, or any of them,
were the heirs of John Taylor, deceased, or entitled to
any interest in the land.   They also asserted title in
themselves, by virtue of the deeds heretofore men-
tioned, and by reason of their adverse possession of
the land, and made their answers counterclaims
against the plaintiffs.   They further averred that
John Taylor was the bastard child of James Overton.
The question as to the legitimacy of James, John and
Rebecca Overton is not made by the pleadings in this
case, although it was raised in the pleadings in the will
contest in the Harlan circuit court; but the defendants
by their answers have put in issue the heirship of
appellees, and deny their ownership of, or title to, the
land in controversy, and the first question to be deter-
mined is, are any of the persons named as plaintiffs in
this action heirs of John Taylor deceased, and as
such, entitled to inherit any part of the land in con-
troversy.   The appellees took the depositions of a
number of witnesses, among them, John Overton and
M. S. Overton, named as plaintiffs in the action, and
proved by them and each of them, that James Taylor,
the father of John Taylor, the patentee, was married
twice; that he first married Ester Platt and by whom
he had one child, Polly Taylor; that thereafter his
wife died, and he married Rachael Swift, by whom he
had three children, James Taylor, John Taylor and
Joseph Taylor; that after the birth of these children,
their father, James Taylor, died, and his widow there-
after became the mother of three illegitimate children,
namely, James Overton, John Overton, and Rebecca
Overton.   This illegitimate child, John Overton, was
a half-brother of John Taylor, and the remote ances-
tor of the persons named as plaintiffs in the petition,
and by virtue of their relationship to him, they claim
an interest in the land.   The appellants insist that
under this evidence, and the law in force at the time

John Taylor died, neither James Overton, John Overton, nor Rebecca Overton, if they had been living at his death, would have inherited from him, nor do their descendants take any interest in the land left by John Taylor at his death.  The solution of this question depends upon the statute in force at the time John Taylor died, because if he died intestate, his estate must be distributed under the statute of descent and distribution in force at the time of his death.  Assuming, as is established by appellees, that James, John, and Rebecca Overton were the illegitimate brothers and sister of John Taylor, can their descendants take by descent any estate left by John Taylor? We think not. The General Statutes of Kentucky, which contains the law in force when John Taylor died, provides in section 5, c. 31, that "A bastard shall be capable of inheriting and transmitting any inheritance on the part of or to the mother, and bastards of the same mother shall be capable of inheriting and transmitting an inheritance on the part of each other, as if such bastards were born in lawful wedlock."

John Taylor's mother died many years before John Taylor did, and it is very plain under this statute, that the Overtons, being illegitimate children of John Taylor's mother, cannot inherit from him.  Allen v. Ramsey's Heirs, 1 Metc. 638; Remmington v. Lewis 8 B. Mon. 606; Berry v. Owens' Heirs, 5 Bush, 452. Therefore no one of the descendants of James Overton, or John Overton, or Rebecca Overton, are entitled to any part of the land in controversy, and not being entitled to it, the next question that arises is, will they be permitted to prosecute this action for and on behalf of other persons who are not named as parties in the pleadings, but who have an interest in the land in controversy?  Section 25 of the Civil Code of Practice provides that, "If the question involve a common or general interest of many persons, or if the parties be numerous and it is impracticable

to bring all of them before the court within a reason-
able time, one or more may sue or defend for the
benefit of all.'' Under this section, which is the only
authority for the maintenance of an action by one or
more persons for the benefit of others, the persons
who bring the action must themselves have an in-
terest in the subject-matter of the action; otherwise
they will not be permitted to maintain it. It would
be manifestly improper and do violence to the mean-
ing of this section if persons who had no interest
whatever in the money or property sought to be re-
covered, were permitted to maintain the action. Un-
der section 18 of the Civil Code of Practice, every
action must be prosecuted in the name of the real
party in interest, except as provided in section 21,
which authorizes certain named fiduciaries and other
designated persons, to bring actions without join-
ing the person for whose benefit it is prosecuted.
Subject to the exceptions specified in section 21, and
modified by the rule laid down in section 25, every
action must be prosecuted in the name of the real
party in interest, and a person who has no interest
in the controversy in any capacity, will not be al-
lowed to maintain an action either for himself, or for
the benefit of any other person. It follows from th:s
that appellees, who were the plaintiffs below, upon
their own showing have no interest in the land in
controversy, and consequently no right to maintain
this action.

It further appears from the testimony of several
witnesses, that there are living descendants and heirs
at law of Polly Taylor, a sister of John Taylor, and
possibly there are decendants of his brothers, James
and Joseph Taylor. The descendants of his brothers
and sister, if there in fact be any, may maintain an
action for its recovery, as the evidence as it appears
in this record is wholly insufficient to show that John
Taylor was a bastard. The issue being made by the

pleadings and evidence, whether or not William Taylor, who made the conveyance to Joseph Overton in 1888, was a son of John Taylor, the patentee, we deem it proper and necessary in this proceeding to determine that question. A careful reading of this voluminous record satisfies us beyond a reasonable doubt that John Taylor did not leave surviving him any child or children ,and that William Taylor from whom Joseph Overton obtained the deed, was not the child of John Taylor. The deed made by William Taylor to Joseph Overton throws no light whatever on the question. It does not indicate by what claim of title the vendor became the owner of the land, and it is a significant fact that neither William Taylor nor Joseph Overton testified in the case, nor did the notary public who took the acknowledgment of William Taylor, although an effort was made by the appellees to obtain his deposition. A large number of witnesses who were acquainted with John Taylor for 30 or 40 years before his death, and who had ample opportunity of knowing his family history and his relations, have testified that he had no child or children. It is true that a few witnesses testified for appellants that John Taylor did have a son named William Taylor, but their evidence is not entitled to much weight.

The question as to the effect of the judgment of the Harlan circuit court in the will contest has been elaborately briefed by counsel on both sides of this case. Ky. St. 1903, §4854, provides that: "When a will of a non-resident, or relative to an estate in this Commonwealth has been proved without the same, an authenticated* copy and the certificate of probate thereof, may be offered for probate in this Commonwealth. When such copy is so offered, the court to which it is offered shall presume, in the absence of evidence to the contrary, that the will was duly executed and admitted to probate as a will of personality in the State or county of the testator's domi-

cile, and shall admit such copy to probate as a will of personality in this Commonwealth. And if it appears from such copy that the will was proved in the foreign court of probate to have been so executed as to be a valid will of lands in this Commonwealth, by the law thereof, such copy may be admitted to probate as a will of real estate." Section 4850 provides that an appeal may be taken from the county court to the circuit court, and thence to the Court of Appeals from every judgment admitting a will to record, or rejecting it. The circuit court shall try both law and facts, unless a jury be required. Under this section an appeal may be taken from the county to the circuit court, from a judgment of the county court probating the will of a nonresident, and an appeal was taken from the judgment of the Harlan county court probating the will of John Taylor, to the Harlan circuit court, and when the Harlan circuit court rendered the judgment heretofore mentioned, it had jurisdiction of the subject-matter involved, and the parties to the controversy; and the judgment of the Harlan circuit court until reversed, vacated or modified, in the manner provided by law, is conclusive and binding upon the parties as to the question adjudicated by that court. The Harlan circuit court did not adjudicate that "The decree of the Hancock chancery court on file herein and offered as a supplied last will and testament of the said John Taylor, deceased, has neither been proven nor probated so as to be a valid will of real estate and to pass title thereto, under the law of this Commonwealth. It is therefore adjudged that the probate of the alleged last will by the Harlan county court be, and the same is, set aside and held for naught." From this judgment the contestees prayed an appeal to the Court of Appeals, but have failed to prosecute it, and the judgment has not been vacated or modified by the court rendering it. The only question adjudicated by the Harlan circuit court

was that the will of Taylor had neither been proven nor probated to be a valid will of real estate, and the order probating it was set aside and held for naught. Under this judgment, the case stands as if the will of John Taylor had never been probated or offered for probate in the county court of Harlan county; and therefore the appellants cannot claim title to the land in controversy under this will.

As the paper title of appellants depends on the alleged deed made by William Taylor to Joseph Overton, and the fact that the will of John Taylor was probated in the Harlan county court, it necessarily follows that their claims to the lands in controversy, in so far as it rests on their paper title must fail. Appellants further contend that they have been in the actual, adverse, and continuous possession of the land in controversy for more than 15 years prior to the institution of this action, and that they are entitled to hold it by reason of this adverse possession. The facts in regard to this claim are substantially these: In the spring of 1888, after Joseph Overton had obtained the deed from William Taylor, it seems that he placed in possession of a small portion of the land one Berry Taylor, as his tenant; and that afterwards at different times, probably as many as five other persons occupied small portions of the land as tenants of Overton; but it does not appear that either Overton or any of his tenants were in the continuous possession of the land. In fact, the impresion is left from reading the evidence that the majority of these tenants only remained on the land a short time, and occupied it without any intention of living on, or cultivating it. It has been frequently held by this court, that to give a party the ownership of land by reason of his adverse possession, the possession must have been not only adverse and actual, but must have been continuous, open and notorious. A title asserted by virtue of

adverse possession cannot be maintained unless there
has been a continuity of possession.  The mere fact
that Taylor and others lived on and cultivated, at diff-
erent times and for short periods, small portions of
this land, is not sufficient to satisfy the ruling of this
court on the question of holding land by adverse pos-
session.

In Trotter v. Cassady, 3 A. K. Marsh, 365, 13 Am.
Dec. 183, this court held, in an action under the 20-
year statute, that: "To make the bar of 20 years'
possession operative and effectual, to destroy a right
of entry, it is necessary that the possession, claimed
as adverse, should be shown to be continued and un-
interrupted.  Or, in other words, if there is any period
during the 20 years in which the person having the
right of entry could not find an occupant on the land
on whom he could bring and sustain his ejectment,
that period cannot be counted against him as part of
the 20 years."  In Jones v. McCauley's Heirs, 2 Duv.
14, it was held that: "The law of limitation, being
reasonable and founded on principle, does not allow
the statute to run when there is no cause for action;
and therefore to bar an ejectment by time, the adverse
possession must have been, not only actual, but so con-
tinued for 20 years as to have furnished a cause of ac-
tion every day during that whole period, and conse-
quently, as conclusively and consistently adjudged,
claim of title, however notorious, and occasional use
under that claim, without actual possession, continued
without intermission or interruption for 20 years, will
not bar an adverse right of entry."  To the same
effect is Barr v. Potter, 57 S. W., 478, 22 Ky. Law
Rep. 416; Hibbard v. Wilson, 32 S. W. 1086, 17 Ky.
Law Rep. 930.  It is also in evidence that Joseph
Overton paid the taxes on this land from the time he
obtained the deed from William Taylor.  The pay-
ment of taxes, however, is a small circumstance show-
ing a claim of owenrship of the land, and is not at all

sufficient to establish an adverse holding within the meaning of the law. Many other questions have been made by counsel on both sides, who have written able and exhaustive briefs in support of their respective contentions, but in view of the conclusion arrived at, we do not deem it necessary to extend this opinion in the consideration of questions that could not affect the decision of the case.

The judgment of the lower court is reversed, with directions to dismiss the petition and counter claims of the several defendants.