## Spence, et al. v. Commonwealth, et al.

(Decided October 14, 1910.)

### Appeal from Bell Circuit Court.

1. Judicial Sales—Setting Aside.—Although inadequacy of price alone is not a sufficient reason for setting aside a judicial sale, yet

if there is coupled with it facts indicating that irregularities were practiced by the purchaser or officer making the sale, or that by misfortune or mistake the owners of the land were prevented from being present, the court will readily seize either of these circumstances and make it grounds for setting aside the sale.

2.  Same—Conditions  Should Not Be Imposed  Before Setting Aside Sale.—When a judicial sale is set aside for good cause, it should be done without attaching any conditions to the order, such as requiring the persons who make the motion to give bond that they will start the bidding at a specified sum at the re-sale; but, if a bond is voluntarily tendered, conditioned that the bidding at a re-sale will be started at a certain sum, the court may receive it, and so order the re-sale, and hold the bondsmen liable on their promise.

3.  Fixing Up-set Price.—The court may also when it seems proper and right, fix a price below which the property cannot be sold.

W. F. HALL, GREEN, VAN WINKLE & SCHOOLFIELD, for appellants.

. WILLIAM AYRES, JAMES BREATHITT, Attorney General, CHARLES I. DAWSON, County Attorney; JAMES H. JEFFRIES, Attorney for Commonwealth, for the appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

This action was brought in the name of the commonwealth against the appellants under the authority of section 4076d of the Kentucky Statutes, for the purpose of forfeiting to the state and selling for taxes a body of land in Harlan and Bell counties, containing some four thousand acres.  In January, 1910, a judgment was rendered directing the commissioner to sell the land for cash and out of the proceeds pay first the attorney fees and costs of the suit and report his acts of the court.  On April 25, 1910, the commissioner filed a report setting out that on that day he had sold the land to Charles H. Davis, one of the appellees herein, for $5,500, and that Davis had paid to him this amount.  The report was ordered to lie over for exceptions and on April 28th, there being no exceptions filed, the report of sale was confirmed and an order made directing the commissioner of the court to make Davis a deed.  On the same day the commissioner executed a deed in accordance with the order, which was examined and approved by the court, and a writ of possession awarded the purchaser. On April 30, the appellants moved the court in writing, supported by affidavits, to set aside for reasons assigned the order

confirming the commissioner's report of sale and directing that a deed be made to the purchaser.

The grounds for setting aside the sale, as stated in the exceptions, are, first: That the attorney and agent of the judgment defendants were prevented from being present at the sale by representations made by the commissioner of the court, who was to make the sale, and the agent of the purchaser that the sale would not be made on the day advertised; second, that the purchaser Davis through his attorney publicly objected to the sale at the time it was made upon the ground that he, Davis, was the owner of the land and this statement prevented persons from bidding at the sale, and as a result thereof the land was sold to one N. R. Patterson, an agent or representative of Davis, who was in fact bidding for Davis and immediately transferred his bid to Davis; third, that the land which only brought at the sale $5,500 was of the reasonable cash value of $12,000 or more.

The affidavit of W. F. Hall, the only attorney for the judgment defendants, states in substance that the sale was made at Pineville in Bell county, some thirty miles from Harlan Court House, Harlan county, at which place he resided. That the defendants, who are numerous, are nonresidents of this state, and all of them had entrusted to Hall, and Templeton, an agent who lived in Tennessee some two hundred miles from Pineville, the duty of looking after their interests when the property was sold, so as to prevent it from being sold at a sacrifice, or less than its fair value. That Hall and Templeton had some weeks previous to the sale decided to purchase the property for their clients at the sale, or require it to bring its fair value; and had agreed to meet each other at Pineville on the 22d of April, 1910, and make arrangements in reference to purchasing the land or having it bring a fair price. That one Duffield, a general land agent for Davis, informed Hall about April 20th that he did not believe the land would be sold on April 25th, as William Ayres, an attorney for Davis, had filed or was preparing to file a suit to enjoin the sale, and according to the understanding of Duffield from Ayres the sale would be enjoined. That after receiving this information from Duffield, Hall had a conversation with Rice, the commissioner who was going to make the sale, and was informed by him that Ayres, as attorney for Davis, was preparing a suit to be filed in the Bell circuit court to enjoin the sale and that the sale would

probably not be made on April 25th, as he would obey the injunction if one was served upon him. That Hall then told Rice that he would not go to Pineville, and at once sent a telegram to Templeton, telling him that the sale of the land would be enjoined and it would be unnecessary for him to be at Pineville as Hall would not be there. That Hall did not learn until April 28th, that the sale had been made on the 25th. Hall further said that the land was worth $12,000 and at a fair sale would bring that amount; and if he and Templeton had been present at the sale they would have purchased or have procured a purchaser for the land at that price.

The material facts stated in this affidavit are in substance corroborated by Templeton and other persons. It is also conceded that Patterson bought the land and at once transferred his bid to Davis, and that no person representing the defendants was present at the sale. Mr. Ayres, the attorney, admits that he contemplated bringing a suit to enjoin the sale, and afterwards abandoned this course. He also states that he was present at the sale as attorney for Davis and publicly objected to the sale upon the ground that Davis owned or had a large interest in the land proposed to be sold. The commissioner, Rice, states that he had a conversation with Hall in reference to whether the sale would be made on April 25th, and although there is some difference in their versions as to what occurred, it is not substantial. Duffield admitted having conversations with Hall, in which the matter of the sale being enjoined was discussed, but denied that he said anything to lead Hall to believe that an injunction would be obtained or a sale not made at the time advertised. Without relating further the contents of the affidavits, we think it may fairly be said that the land was worth about $12,000, and that Hall in good faith believed from the conversations he had with Rice, the commissioner, and Duffield, the agent of Davis, that the land would not be sold on April 25th, and that induced by this belief neither he nor Templeton was present at the sale although both of them would have been there had they known the sale would be made.

The lower-court after finding as a matter of fact that "Hall and Templeton labored under misapprehension and mistake as to the making of said sale on said day; and that under said misapprehension and mistake, and by reason thereof, and by reason of their belief that said sale would not be made on said day, said Hall and Tem-

pleton were not present at said sale; nor was either of the said defendants present, nor was any other person then present to represent them or act for them'' further ruled that the sale would be set aside only upon the condition that the defendants should within thirteen days pay into court the sum of $7,000; and unless this amount should be paid within the time directed, the motion to set aside the sale would stand overruled. The defendants, appellants here, declined to accept the conditions imposed and thereupon the court overruled their exceptions and they appeal.

Aside from the fact that no one representing the defendants was present, the circumstances attending the sale leave the impression that it was not fairly conducted. The statements made by the attorney for Davis in all probability deterred any person desiring to purchase the land from bidding, and yet notwithstanding these statements the land was sold to an agent of Davis, who immediately transferred to him his bid. It is suggested that other reasons than a mere desire to protect the rights of Davis prompted these statements, but it is not material what reasons induced them. That they had a prejudicial effect especially in the absence of any person representing the defendants can hardly be denied. Although the property sold for a great deal less than it was reasonably worth, we have frequently held that inadequacy of price alone is not a sufficient reason for setting aside a judicial sale, but, as said in Bean v. Haffendorfer, 84 Ky. 685, ''When the price bid is greatly disproportioned to the actual value of the property, only slight additional circumstances are required to justify and make it the duty of the chancellor to set it aside. And where there is any fact connected with the sale from which fraud may be presumed, or when the defendant, by casualty or misfortune, has been prevented from appearing in the action, or taking steps to avoid a sacrifice of his property, it should be set aside.'' To the same effect is Dale v. Shirley, 5 B. Mon. 492; Columbia Finance & Trust Co. v. Bates, 24 Ky. Law Rep. 2412; Rosenham v. Pottinger, 22 Ky. Law Rep. 1290; Morris v. McCadeen, 23 Ky. Law Rep. 539; Byrne v. Henderson, 11 Ky. R. 986.

We are of the opinion that the facts and the circumstances stated, coupled with the inadequacy of price, were sufficient reasons for setting aside the sale. But, it is said that the sale should not have been set aside because the defendants failed to comply with the condi-

tions imposed by the court. There will be found in some of the cases heretofore cited, statements to the effect that it is proper for the court before setting aside the sale to require a bond to be executed, conditioned that upon a re-sale the bidding will be started at a sum specified. But we do not know of any settled rule of equity practice that requires or demands that a sale shall not be set aside unless a bond conditioned as indicated is executed. Nor do we know any good reason why conditions such as these should be imposed. When there is good cause for setting aside a judicial sale, it should be done without attaching any conditions to the order. Of course if a bond is voluntarily tendered, conditioned that the bidding at a re-sale will be started at a certain sum, the court may receive it and so order the re-sale and also hold the bondsmen to their promise. The court may also when it seems right and proper so to do, fix a price below which the property cannot be sold, but this is as far as the court should go in cases like this.

We are, therefore, of the opinion that the exceptions of the appellants should be sustained, and the sale and deed made thereunder set aside. Out of the proceeds of a re-sale, if the land is purchased by other persons than Davis, he should be reimbursed the money he paid, with interest; or, if he again becomes the purchaser, he should have credit on his purchase price by the amount paid by him, with interest.

Wherefore the judgment of the lower court is reversed, with directions to proceed in conformity with this opinion.