## Lemar et al. v. Kentenia-Cumberland Corporation et al.

Nov. 18, 1941.

W. A. Brock and F. M. Jones for appellants.

H. C. Clay, C. B. Spicer, H. M. Collins, and Logan Patterson for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER —Affirming.

The appellants, sixteen in number, brought this suit in ejectment against the appellees, Kentenia-Cumberland Corporation, H. C. Clay and C. B. Spicer, asserting title and the right of possession to 4,000 acres of land lying in Harlan and Bell Counties. A patent to the land was issued to and perfected by John Taylor in 1845. He died in 1874 still owning it. The plaintiffs alleged that Taylor had no direct descendants and that his heirs were a half-sister, Polly Taylor, and a half-brother, James Taylor, and that they, the plaintiffs, are their descendants and the present heirs at law of John Taylor. The defendants traversed nearly all the allegations of the petition; pleaded the statute of limitations; averred that a number of named persons known to the plaintiffs were claiming to be heirs of John Taylor and were not parties to the action; set up their own title to the land deducible of record from the commonwealth; and also by adverse possession. Their answers were made counter-claims as a suit to quiet their title. By an amended petition the plaintiffs alleged that the record title claimed by the defendants was based upon the purchase of the land by their predecessors at a judicial sale had in a proceeding to forfeit the land for non-payment of taxes brought by the commonwealth, which was then attacked as void upon a number of grounds. A demurrer to the amended petition was sustained. The replies to the separate answers joined issue on the affirmative allegations and then charged that the defendants' claimed title deducible from the commonwealth was founded upon the forfeiture proceeding described, while their, the plaintiffs', title was of older derivation, namely, the patent of 1845; hence was superior. They also charged that "several of the owners and heirs of John Taylor" were never summoned or notified of those proceedings of forfeiture and were, therefore, not before the court, and that they "have not had their day in court." Issues were completed by rejoinders.

The case was transferred to the equity docket and

much testimony taken by depositions. An attested copy of the record in the forfeiture 'suit was filed as the origin of the defendants' title. Although the court had sustained the demurrer to the plea of invalidity of the judgment, or rather the sale under the judgment, that was also covered by the testimony.

The court dismissed the petition and adjudged the Kentenia-Cumberland Corporation to be the owner and entitled to the possession of certain 2,800 acres and the individual defendants of the remaining 1,200 acres of land. The plaintiffs appeal.

If the petition be strictly measured by technical rules, it is doubtful if the overruling of the demurrer to it was proper. As the case became one in equity, the court might well have dismissed plaintiffs' claims upon the ground of staleness and one to which the doctrine of laches should be applied. See Badger v. Badger, 2 Wall. 87, 17 L. Ed. 836; Predestinarian Baptist Church v. United Baptist Church, 139 Ky. 110, 129 S. W. 546. Furthermore, it is doubtful that the plaintiffs proved that some of them were the heirs at law of John Taylor. It is certain there were a great many others who could claim heirship and that the fractional rights, if there were any of the particular plaintiffs, were not defined or established. Had the plaintiffs succeeded in maintaining their claims to an interest in the land, it would have been impossible for the court to have adjudged what that interest was.

In their brief appellants say that the appellees rely upon a chain of title emanating from Elizabeth Berry and William Taylor. They then proceed to show its invalidity. The appellees do have such a record title, at least to part of the land, but that appears incidentally. We find nothing in the record asserting that as appellees' title and they say in their brief they do not rely upon it. However, the matter is at least interesting.

As disclosed in Overton v. Overton, 123 Ky. 311, 96 S. W. 469, in 1888, William Taylor, purporting to be the only child of John Taylor, executed a deed to this 4000 acres to Joe Overton for $1,050. In 1897 Elizabeth Berry brought suit in the chancery court of Hancock County, Tennessee, where John Taylor had died in 1874, claiming that he had made a will devising all his property to her but the will had been lost. She made Wil-

liam Taylor and the unknown heirs of John Taylor parties defendant. An agreed judgment was entered in that case probating the original lost will. Following that Elizabeth Berry and Joe Overton (as grantee of William Taylor) executed to each other deeds by which she and her attorneys were conveyed about two-thirds and Overton one-third of the land. Those deeds were recorded in Harlan County, Kentucky, and the alleged lost will put to record. But in June, 1900, certain parties as alleged heirs of John Taylor contested the probate of the will in the Harlan Circuit Court. It is shown that the parties in that suit were descendants of James, John and Rebecca Overton who were the illegitimate children of John Taylor's mother. The proceedings in the Tennessee court were attacked as a fraudulent scheme to deprive John Taylor's rightful heirs of the land. The circuit court held the alleged will had not been established and that the probate in the Harlan County Court should be set aside and held for naught. That judgment was never appealed from or set aside. The case which reached this court was brought by certain persons claiming to be John Taylor's heirs (who were estimated then [in 1903] to number about 500) against certain persons who claimed to be successors in title of Elizabeth Berry and William Taylor to remove the cloud on plaintiffs' title and to have the conveyances made by defendants held void. The plaintiffs were permitted by order of court to prosecute the action not only for themselves but for and on behalf of all other heirs of John Taylor. Upon a voluminous record judgment was rendered for the plaintiffs. Our opinion reveals the complications of relationship and legitimacy of all the parties to that suit—Overtons and Taylors. Under the statute in force at the time John Taylor died, it was held that Overton could not inherit his property; that William Taylor was not his child; they, as plaintiffs, had no interest in the land, and could not prosecute the suit for the real owners. The judgment was accordingly reversed with directions to dismiss the petition and the counter-claims, thereby effectually destroying all claims emanating from the alleged lost will and deeds founded thereon. It may be observed that the record in that case indicates there were then living descendants not only of Polly and James Taylor, under whom the plaintiffs in this action claimed, but also of another half-brother, Joseph Taylor.

We return to the consideration of the judgment in the forfeiture proceeding upon which the defendants' record title rests. The suit was brought in February, 1908, under Section 4076a, etc., of the Statutes, by the local Commonwealth's Attorney against 56 named defendants and the unknown heirs of John Taylor, to forfeit the title and sell this 4,000 acres of land. H. M. Templeton and W. F. Hall were also made parties defendant as having asserted some claim to the land. Hall filed a disclaimer of interest. Some of the plaintiffs in the case at bar were parties to that action. Others, it is said, were not served with process, the presumption of verity of the officers' returns to the contrary notwithstanding. Most of the defendants were proceeded against by warning order although it is charged in this case they were known to be residents of Kentucky and some of them of Harlan and Bell Counties. Notice to the unknown heirs was posted as provided by the statute except that the act of posting was done by an attorney in the case rather than the circuit court clerk personally. A verdict was returned in the proceeding for the commonwealth. Judgment was entered thereon forfeiting the land and transferring title back to the commonwealth. The case was continued in order to give the defendants an opportunity to redeem the land as provided for in the Statutes, but no redemption was ever undertaken. The land was sold under the decree to C. H. Davis. Exceptions to the report of sale were filed by W. F. Hall as attorney for the defendants. They were sustained on certain conditions. This court reversed that order and directed a re-sale of the land. It was assumed, because not questioned, that the judgment forfeiting the land was valid. Spence v. Commonwealth, 140 Ky. 272, 130 S. W. 1113. At the re-sale A. J. Asher and W. F. Hall bought the land and received a deed from the court's commissioner. This forms the basis of the defendants' record title. The attack on the judgment or order of sale (depending upon how the petition is construed) is collateral and not direct. We think the court properly sustained the demurrer to the amended petition. See Wolverton v. Baynham, 226 Ky. 214, 10 S. W. (2d) 837. It does not seem necessary to set forth our reasons for this conclusion, for even if it should be held that among the number of grounds of this collateral attack there was one which required that either the judgment or the order confirming the sale to be held

void, the deed and chain of title emanating therefrom gave color of title to the 4,000 acres. Warfield Natural Gas Company v. Ward, 286 Ky. 73, 149 S. W. (2d) 705.

The defendants established their title by adverse possession. The evidence justifies the conclusion that they and their predecessors, realizing throughout the years that their title had been questioned and was perhaps in verbal dispute, carefully kept control and exercised dominion over the property in such a way as would enable them to perfect their title by adverse possession. They had fenced the land completely in 1911. The evidence adduced by the plaintiffs to the contrary is negative in character (Mann v. Phelps, 269 Ky. 493, 107 S. W. (2d) 288) and by no means sufficient to disprove defendants' open, notorious and adverse possession or to establish title in themselves or others. We are of opinion, therefore, that the judgment dismissing the petition and quieting title of defendants in their respective portions of the whole body of land was proper.

Judgment affirmed.