## Wytheville.

## McMULLIN'S ADM'R, &C., v. SANDERS.

### August 14, 1884.

1. FRAUD—*Rescission.*—A false representation of a material fact constituting an inducement to the contract, on which the party had a right to rely, is a ground for a rescission of the contract by a court of equity, although the party making the representation was ignorant whether it was true or false; the real inquiry is not whether the party making the representation knew it to be false, but whether the other party believed it to be true, and was misled by it in making the contract. *Lowe* v. *Trundle*, 78 Va. 65.

2. IDEM—*Statute of Frauds—Case at Bar.*—M. bought land at judicial sale; induced S. to take it off his hands; telling him the judgments, to pay which the land was sold, were obtained *before* debtor's marriage, and hence were paramount to his wife's contingent right of dower, and would consume the entire purchase price. These representations were false. Debtor died. His widow recovered dower against S., who was adjudged to pay her annually, interest during her life on one-third of the land's value. S. brought bill in equity for compensation against A., administrator of M. Defendant demurred, and plead the statute of frauds. Demurrer was overruled and plea rejected. On appeal—

HELD:

1. Demurrer was properly overruled.
2. Plea of statute of frauds was properly rejected. *Brown* v. *Brown*, 77 Va. 619.
3. The court of equity had jurisdiction of the fraud set out in the bill, and to afford the relief prayed for, by transferring the liability for the widow's annuity from S. to the estate of M., to accomplish which there was no adequate remedy at law. *Wampler* v. *Wampler*, 30 Gratt. 454.

Appeal from decree of circuit court of Smyth county entered January 2d, 1884, in the cause of W. C. Sanders against F. Alexander, administrator of Fayette McMullin, deceased. The object of the suit and the facts of the case are tersely stated in the opinion. The decree was against the administrator, and he obtained an appeal and *supersedeas* from one of the judges of this court.

*James H. Gilmore*, for the appellant.

The demurrer to the bill in the court below should have been sustained.

Because this is really a suit upon a contract for the sale of land which was not in writing and upon which no action, therefore, will lie. Code of 1873, ch. 140, § 1, p. 985.

Because, if it were held to be, as claimed, an action outside of the contract, the allegations of the bill were not such as to sustain an action of this character. Where a party sues *outside* of the contract for damages or where a stranger to the contract is sued for damages the plaintiff must allege and prove,

1st. That his adversary has made a false representation of material facts.

2d. That he made it with knowledge of its falsity.

3d. That the plaintiff was ignorant of its falsity and believed it to be true.

4th. That it was made with intent that it should be acted upon, and

5th. That it was acted upon by the complaining party to his damage.

Bigelow on Frauds, p. 3, *Ibid* p. 56; Damnum Absque Injuria, by Weeks, § 137, p. 280. No such allegations were made in this bill.

Because, in such a case as this, where the party complaining is seeking no equitable relief, and where law and equity have concurrent jurisdiction, he has no right to invoke the aid of a

court of equity without alleging and proving that the remedy at *law* is not full, adequate and complete, and especially is this the case where the party complaining retains the property which he has acquired and sues besides for damages.

Pomeroy's Eq. Juris. Vol. 2, §§ 911 and 914, note 1 to § 914 ; *Woodman* v. *Freeman,* 25 Me. 531; *Piscatqua & Co.* v. *Hill,* 60 Me. 178; *Denny* v. *Gilman,* 26 Me. 149, 153; *Stone* v. *Ramsey,* 4 Mon. 336; *Cocke* v. *Hardin,* 6. Litt. 374.

If, however, the party complaining would have the right in a case of *concurrent* jurisdiction to resort either to equity or to law, still he would have to make the same allegations and proof in the one case as in the other, and that has not been done in this case.

The party complaining is only excused from proving both the *scienter* and the *damage* when he comes into a court of equity asking a *rescission* of the contract. It is only in such cases that the principles declared in the case of *Grim et als.* v. *Byrd,* 32 Gratt. are applicable. And in such cases the relief is granted rather upon the ground of *mistake* than of fraud. Bigelow on Fraud, p. 61. Story's Eq. Juris. § 142.

Here the party complaining retains the property which, he admits, he acquired by his contract and sues for damages besides. In such a case he must certainly prove both the *scienter* and the *damage or hurt ;* for *non constat* that he has suffered damage. The farm which he purchased may be really worth many thousand dollars more than he gave for it, and if it is he has suffered no hurt or damage.

If the bill is sustainable as it stands the proof shows that the representation was merely the expression of a *legal opinion* by Gov. McMullin for which his estate is not liable. If *damnum* has resulted it is *"damnum absque injuria"* and the bill should have been dismissed.

The proof was not sufficient to sustain the allegation. His only proof is the *recollection* of Goolsby of what he says were *conversations* with McMullin in his life-time. Of all testimony

this is the most unreliable and unsatisfactory and is not sufficient *of itself* to be the foundation of a decree. Greenleaf on Evidence, § 200 and note; *Phelps* v. *Seely*, 22 Gratt. 589, and cases there cited.

Upon the whole case the circuit court of Smyth clearly erred in not dismissing the bill.

*White & Buchanan*, for the appellee.

HINTON, J., delivered the opinion of the court:

The record shows that in September, 1882, the appellee, William C. Sanders, instituted suit in the circuit court of Smyth county against the appellant. In his bill he alleges that on the 28th day of February, 1876, Fayette McMullin, became the purchaser of a certain tract of land lying in the county of Washington, and known as the Absolom Beattie farm, at a judicial sale, made in the cause of Hopkins, Hull & Atkinson, &c., against McDowell, Beattie & Co., at the price of $14,000; that on the same day, and after the purchase, McMullin came to him and asked him to take the purchase off his hands at the price he, McMullin, had agreed to pay for it; that he told McMullin he had paid a high price for the land, and that Mrs. Beattie, who was much younger than her husband, claimed that she had a contingent right of dower in it; that McMullin, in reply to this statement, assured the complainant that the judgments, for which the land had been sold, were obtained *before* Mrs. Beattie's marriage with her husband, and that she had no dower interest whatever in the land, and that he, McMullin, would not give five dollars for her claim; that he, relying upon the statement and representation of McMullin that the judgments, for which the land was sold, were obtained before her marriage, and that they amounted to a sum larger than the purchase price of the land, requested McMullin to keep the proposition open for a few days, which he agreed to do; that the complainant thereupon stated

to his lawyers, Judges A. S. Fulton and John H. Fulton, and Crockett & Blair, the facts as stated and represented to him by McMullin, to wit: that the judgments were obtained before the marriage of Beattie, and were more than sufficient to absorb the whole purchase money of the land, whereupon his lawyers advised him that upon that state of facts Mrs. Beattie had no dower interest in the land ; that the complainant then agreed to take the purchase off McMullin's hands ; the trade was consummated and the sale was reported to the court in the name of the appellee, Sanders.   That throughout the whole transaction he relied upon these statements and representations of McMullin, and never doubted their truth for a moment.   He knew that McMullin was a member of the firm of McDonald, Beattie & Co., and was in a situation to know all the facts connected with the case, and had no doubt that he did know them.   He also knew that McMullin was a large creditor of the firm of McDonald, Beattie & Co., and of McDonald & Beattie, and was responsible to the creditors of McDonald, Beattie & Co. for any balance that the assets of McDonald & Beattie failed to pay, and was, therefore, deeply interested in having the land of said Beattie sold for as high a price as possible.

In July, 1880, A. Beattie died, and at the September rules following, his widow, Parmelia Beattie, brought suit against the plaintiff, Sanders, for the purpose of having dower assigned her. That he notified McMullin of the institution of this suit so that he might aid in the defence of it.   That he, Sanders, made all the defence possible in the case.   But it was ascertained in the cause that the judgments, for the payment of which the land was sold, were not obtained until after Mrs. Beattie's marriage, and that she was entitled to dower in said land, and a decree was accordingly rendered, in that cause, by which the appellee was required to pay to Mrs. Beattie, the sum of $146.66, as of the 4th day of May, 1881, and $220 on the 4th day of May, 1882, and the sum of $220 on each succeeding 4th day of May, during the life of Mrs. Beattie, and the costs of the suit.   The bill then

goes on to allege that $220 is the annual interest on $3,666.66, one-third of the value of said land, at the time of A. Beattie's death, as fixed in said cause; and that the representations of McMullin as to the date and amount of the said judgments, as to the time of the marriage, and as to her claim of dower, were false and fraudulent; or if said representations were not fraudulently made, they were made as true by McMullin, when they were in fact false. The bill then charges that the complainant, Sanders, has been greatly injured and damaged by reason of the said false and fraudulent representations in this that he bound himself to pay all that the land was worth, when free from incumbrance, yet he is compelled to keep the land at the price agreed to be paid for it, and also to pay to Mrs. Beattie the annual interest on $3,666.66, or $220 per year, during the remainder of her natural life. The bill further alleges that McMullin left a large real and personal estate, more than sufficient to pay all of his indebtedness. It avers that Sanders has no adequate remedy at law, but that a court of equity will furnish the relief to which he is entitled, and then concludes by praying that the estate of the said F. McMullin may be required to pay the amounts already paid by the complainant to Mrs. Beattie and the sums decreed to her in said cause, to the relief of the complainant, or that the said estate be required to deposit in court a sum whose interest, when loaned out, will be sufficient to meet said payments, &c.

In this suit such proceedings were had that on the 2d day of January, 1884, a decree was rendered which requires the defendant to make good out of his intestate's estate the several sums which had already fallen due under the provisions of the final decree entered in the suit of Parmelia Beattie against Sanders, and to provide for the annual payments of $220 to accrue in the future, by loaning out the sum of $3,666.66, and paying the annual interest thereon, on the 4th day of May in each year, to the said Parmelia Beattie during her life. And from this decree this appeal has been taken.

Now, in the outset, I think that the plea of the statute of frauds was properly rejected, for this is not, as has been supposed, a suit upon a contract for the sale of land, which contract could not be enforced under the statute, if it were not in writing; but it is a suit brought to obtain relief from the results of the false representations of a party which have induced the plaintiff to enter into a contract by which he has suffered pecuniary loss. It may not be amiss to observe, however, in passing, that even as to those executory contracts, which are within the statute, it is now well settled that when they have been fully executed the statute has no power over them and no effect upon the rights, duties, and obligations of the parties. As it has been well said by Mr. Browne, in his work on the statute of frauds, when such contracts, meaning such contracts as are within the statute, are fully executed on both sides, the positions of the parties are fixed, subject of course to the power of a court of equity to afford relief in cases of fraud and mistake, and subject to such subsequent conditions and qualifications as may be contained in any written memorandum still binding upon them. Browne on Stat. of Frauds, 114, 115; Wood on Stat. of Frauds, 492; 2 Parsons on Contracts, 338; *Stone* v. *Dennison*, 13 Pick. 1; *King* v. *Welcome*, 5 Gray, 44; *Townsend* v. *Hargraves*, 118 Mass. 334; Bishop on Contracts, § 502. The demurrer was also properly overruled. A learned and philosophical writer upon equity jurisprudence has amongst his classification of "Forms of Fraudulent Misrepresentation," the following, viz:

"(1), where a party makes a statement which is untrue, and has, at the time, an actual, positive knowledge of its untruth, and the necessarily resulting intent to deceive; (2), where a person makes an untrue statement, and has, at the time, no knowledge of its truth, and even has no belief in its truth, he is chargeable with fraud in equity as well as at law; (3), where a person makes an untrue statement, and has, at the time, no knowledge of its truth, he is chargeable with fraud, although

he has no absolute knowledge of its truth, and may claim to
have a belief in its truth.     *     *     *     *     *
In other words, it is settled in equity by an overwhelming array
of authority, that where a person makes a statement of fact,
which is actually untrue, and he has at the time no knowledge
whatever of the matter, he is chargeable with fraud, and his
claim to have believed in the truth of his statement cannot
be regarded as material." For, says he, "the definite asser-
tion of something which is untrue, concerning which the party
has no knowledge at all, is tantamount in its effects to the
assertion of something which the party knows to be untrue."
2 Pomeroy's Eq. Jurisprudence, §§ 886, 887, and cases cited.

Now, assuming what we regard as undeniable, that the above
mentioned forms of misrepresentation are all cognizable in
equity, we have only to look to the statement of the case as
made in the bill in connection with the direct averment also
made in the bill "that the representations of said McMullin as
to the date and amount of the said judgments for which said
land was sold, as to the time of Mrs. Beattie's marriage, and as
to her claim of dower, were false and fraudulent, or that if said
representations were not fraudulently made, they were made as
true by McMullin, when they were in fact false," to see that
fraud is sufficiently charged in the bill, and that the case is
a proper one for a court of equity.

But a court of equity was the proper forum in this case for
another reason. In this case not only was there no plain,
adequate and complete remedy at law, within the meaning of
those words as defined by Judge Story, but here the remedy
sought for, which was, by the bye, the only appropriate remedy
in the case, was essentially equitable in its character. The
object of the suit, plainly disclosed in the pleadings and proofs
in the cause, was not alone to recover damages for the imposi-
tion which had been practised on the plaintiff, although that
could not have been accomplished without a multiplicity of
suits, which is in itself a ground of equitable jurisdiction, but

its object was more far-reaching. It was at once to recover
of the estate of Fayette McMullin the amounts which the
plaintiff had already paid to Mrs. Beattie, with the costs of
her suit, and to require that the sums which had been decreed
to be paid to her for the future, should be paid to her
annually, as they should become due, out of the estate of the
said McMullin, in exoneration of the plaintiff. Manifestly this
relief, which would "secure the whole right of the party in a
perfect manner, in the present time and in future," could only
be obtained in a court of equity, and the jurisdiction of that
court in the premises is complete. 1 Story's Eq. Juris. § 33;
1 Pomeroy's Eq. Juris. §§ 139, 245, 250; 2 *Id.* § 889; *Wam-*
*pler* v. *Wampler*, 30 Gratt. 454.

In the first of these three classes of cases, the *scienter* or
knowledge of the falsity of the representation will often be
imputed to the party; while in the cases falling under the two
other heads, such knowledge is immaterial, the gravamen of the
complaint being, in both of them, that there has been an asser-
tion of something which is untrue, concerning which the party
has no knowledge, which is tantamount in its effects to the
assertion of something which the party knows to be untrue.
2 Pomeroy's Eq. Juris. §§ 886, 887.

But if we look into the case, upon the merits, it will equally
appear that the plaintiff below, the appellee here, is entitled to
the relief which he seeks. " The doctrine is believed to be well
settled in the United States," says Staples, J., in *Grim et al.* v.
*Byrd*, 32 Gratt. 300, " that a false representation of a material
fact, constituting an inducement to the contract, on which the
purchaser had the right to rely, is a ground for a rescission by a
court of equity, although the party making the representation
was ignorant as to whether it was true or false; and the real
inquiry is not whether the vendor knew the representation to be
false but whether the purchaser believed it to be true and was
misled by it into entering into the contract. For in such case,
whether the false representation was innocently made or know-

ingly made, the effect is the same upon the purchaser." And this doctrine has been repeatedly affirmed in the decisions of this court in cases where applications have been made to courts of equity for rescissions of the contracts. *Foreman* v. *Linhart*, 77 Va. R. 540; *Lowe* v. *Trundle*, 78 Va. 65; *Crump* v. *U. S. Mining Co.*, 7 Gratt. 352; *McFerrin* v. *Taylor*, 3 Cranch, 281; 1 Story's Eq. Jur. § 193; *Brown* v. *Rice's Adm'r.*, 26 Gratt. 473. "And where," says Mr. Pomeroy, "the misrepresentation does not extend to the entire scope of the agreement, or even to any of its most important parts, but relates merely to some incidental, subordinate or collateral feature of it, the court, instead of denying all relief to the plaintiff, may direct a specific performance with an abatement of the price, or other form of compensation, to the defendant." 2 Pomeroy's Eq. Jur. § 889. And so where the misrepresentation is intentional and the remedy by rescission would be granted the injured party may waive his right to a rescission and may insist on a partial specific performance with compensation for the defect if the case be such as to furnish a foundation for estimating the amount of compensation. 2 Pom. Eq. Jur. § 899, p. 388, note 1. And "though," says Mr. Bigelow, "a party to a sale of property obtained by the misrepresentation of the opposite party may not be entitled to a rescission he may still be entitled to compensation for the damage sustained." And "this," says he, "will be true in general where the rights of third parties have intervened and become a valid claim upon the property since the sale." Bigelow on Fraud, 407; Kerr on F. & M. 327; *Hutton* v. *Rossiter*, 7 De Gex, Mc. & G. 8; *Lynch* v. *Mercantile Trust Co.*, Feb'y No. Va. L. J., 1884.

Now, in the light of these principles, can it be said with any show of reason that McMullin, who must be regarded as the original purchaser, could, by the use of representations which were certainly false and which he ought to have known were false, induce the appellee to become the purchaser of this farm for its full value and in ignorance of the fact that the widow held dower in it, and yet that a court of equity is powerless to relieve

against such a wrong. I unhesitatingly answer, no. As the result of these misrepresentations the appellee has been saddled with an ascertained and annually recurring liability, which must continue during the life of the widow. This liability cannot be accurately estimated in damages, for any limit which may be assigned to the life of the widow must be conjectural. In such a case, therefore, it is the special province of equity to redress the wrong in a way peculiar to that forum, by transferring the liability from the appellee to the estate of McMullin. It is needless to extend the discussion further ; the decree of the circuit court is plainly right and must be affirmed.

DECREE AFFIRMED.