## Illinois Central Railroad Company v. Baker.

(Decided October 28, 1913).

Appeal from Muhlenberg Circuit Court.

1. Action—Multiplicity of Suits—Equity Will Prevent.—The jurisdiction of a court of equity may be invoked to prevent a multiplicity of suits growing out of the same transaction or arising from the same common cause.

2. Action—Multiplicity of Suits—Grounds of Equitable Jurisdiction to Prevent.—When a number of persons, who had no meritorious or enforceable demands, brought separate suits in an inferior court against the same defendant on causes of action growing out of the same transaction, the defendant might maintain an equitable action in the circuit court to enjoin the prosecution of these suits in the inferior court and compel the plaintiffs to assert their claims, if any they had, in the equity suit.

3. Action—Multiplicity of Suits—Jurisdiction of Equity to Prevent.—There is a broad distinction between invoking the jurisdiction of a court of equity to prevent a multiplicity of suits by different plaintiffs each having a separate, distinct, meritorious cause of action, and invoking this jurisdiction to prevent a multiplicity of suits by plaintiffs who have not legally enforceable demands aganst the defendant. In the one case the plaintiffs might be required to assert their claims in one suit, while in the other they would not.

4. Action—Multiplicity of Suits—Injunction to Prevent Practice.—Where a multitude of suits have been brought by different plaintiffs in an inferior court against the same defendant, all resting on the same common ground, the defendant may bring an equitable suit in the circuit court to enjoin the prosecution of the suits in the inferior court and require all of the plaintiffs in the suits to assert claims in the equitable action, if the suits are of such

a character as that it would be proper to adjudicate all of them in one case.

5. Contracts—Right of Third Party or Stranger to Maintain Action on.—Generally a stranger to a contract cannot maintain an action for a breach of it. Actions for breaches of contract are usually only allowable to the parties to the contract or their privies, or to parties for whose benefit the contract has been made.

6. Contracts—Between Carrier and Shipper—Right of Action on.—Where a carrier has committed a breach of its duty in failing to furnish cars to a shipper, the shipper is the only person who can maintain an action against the carrier to recover damages for the breach of its duty. An action will not lie against the carrier in behalf of persons who have suffered loss arising from the inability of the shipper to fulfill contracts with them due to the fact that the carrier did not comply with its obligation with the shipper.

7. Carriers—Liability of to Shipper for Failing to Furnish Cars.—A common carrier is under a statutory duty to furnish to shippers cars needed in their business, and if it fails to furnish such cars without legal excuse therefor, the shipper may have an action to recover the damage he has sustained by the failure of the carrier to perform this duty.

8. Carriers—Duty and Liability to Shipper and Third Parties in Respect to Furnishing Cars.—While a shipper may maintain an action against a carrier for its failure to furnish cars, an action will not lie against the carrier in behalf of persons who have contracts with the shipper and who have suffered damage by the carrier's failure to perform its duty toward him.

9. Carriers—Duty and Liability to Shipper and Third Parties in Respect to Furnishing Cars—Case Stated.—A carrier committed a breach of its duty in failing to furnish cars to the owner of a coal mine, and thereby he was unable to operate his mine, to the damage of the coal diggers who were deprived of employment on account of the failure of the carrier to furnish the cars in which to ship the coal. The coal diggers brought a suit against the carrier to recover damages for the loss of time they had sustained. Held, That they could not recover.

BROWDER & BROWDER, BLEWETT LEE, TRABUE, DOOLAN & COX, TAYLOR & EAVES and ROBERT V. FLETCHER for appellant.

MILTON CLARK, ROBERT HARDISON, JR., C. A. DENNY, WALTER WILKINS and T. O. JONES for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

The appellant railroad company brought this suit in the Muhlenberg Circuit Court against James J. Rice, county judge of Muhlenberg County, and by virtue of his office judge of the quarterly court of that county;

Milton Clark, Robert Hardison, C. A. Denny and Walter Wilkins, attorneys at law, and 41 other named indi-viduals. It was charged in substance in the petition that the 41 persons named had each, through Clark, as attorney, filed his separate petition in the quarterly court of Muhlenberg County seeking to recover from the railroad company less than $25, "for its failure to perform a public duty which it owed to him as a member of the public," and that each of the petitions or state-ments was filed on a printed blank identical in language except as to the amount sued for, the amounts ranging from $17 to $24.

It was further averred that the railroad company entered a motion in each of the cases in the quarterly court asking that the petitions be made more specific, and thereupon there was filed in each case by each plain-tiff an amended petition setting out that his cause of action arose upon the following state of facts, namely:

"That the plaintiff was a coal digger employed at Luzerno, Kentucky, by the W. G. Duncan Coal Company, on the dates alleged, and that prior to such dates he had arranged with said coal company to work as a coal dig-ger in its mines and that just prior to said times said coal company had contracts whereby it had disposed of the whole output of its said mine and was in a position to employ men to fulfill its contracts and that said coal company through its agents notified this defendant, Il-linois Central Railroad Company, that it needed cars to transport its coal and that said railroad company failed and refused to furnish the cars as ordered and that said failure was due to the fact that said railroad company had not equipped itself with sufficient cars to handle the freight, especially the coal that was ready to be shipped from said mines and the various other mines along its line in Muhlenberg County, and that said fail-ure to furnish said cars was due to the unfair and unjust discrimination against said coal company and in favor of the other coal companies along said railroad line in that county and other adjoining counties; and that dur-ing said time said railroad company, contrary to the statutes, was furnishing to other mines cars which en-abled them at all times to run and operate their said mines and find a market for their product; that by rea-son of said failure to furnish cars said coal company was unable to operate and to furnish said plaintiff, its em-ployee, labor during the month of September, 1912,

whereby he was prevented from having employment on the days named whilst if during said time said railroad company had complied with the demands of said coal company to furnish cars he, said employe, would have had employment during said time, but by reason of his failure to obtain it he was damaged in the sum claimed.''

It was further averred in the petition that Clark, the attorney mentioned, acting in concert with others, had entered into a conspiracy with some 1,600 coal miners by which they were to institute actions against the railroad company in the Muhlenberg Quarterly Court similar to those pending in the quarterly court, to recover for each of said persons sums less than $25. It was further averred that all of the pending suits, as well as the contemplated suits, were based upon the ground that the railroad company had committed a breach of its duty toward each of the coal diggers in failing to furnish to the Duncan Coal Company a sufficient number of cars to enable it to operate its mine, and by reason of this failure the coal company was unable to employ the coal diggers, and as a consequence they lost the wages they would have earned if the railroad company had performed its duty. That the question involved in all of the pending and contemplated actions could and should be determined in one action. That the coal diggers and their attorneys, for the purpose of preventing an appeal from the quarterly to the circuit court in any of the pending or contemplated suits, fixed the amount of recovery in each case at less than $25. That it would cost the railroad company a large amount of money and subject it to much inconvenience to defend each of these separate actions in the quarterly court, and, therefore, the prosecution of these actions should be enjoined and the plaintiffs be compelled to come into the equity suit and assert any claims they might have.

It was further averred in an amended petition that one coal digger had brought suit in the circuit court of Muhlenberg County to recover from the railroad company some three hundred dollars, upon the same cause of action as that upon which the suits in the quarterly court were rested, but that Clark, as attorney, and the other coal diggers, by threats and intimidation, forced him to dismiss his suit in the circuit court.

Upon this state of facts an injunction was sought against the defendants and each of them to restrain the prosecution of the actions instituted in the quarterly

court and to restrain them from instituting similar actions in the quarterly court and to prohibit the judge of the quarterly court from taking any action in the suits pending in his court or taking jurisdiction of other like suits that might be brought.

To this petition as amended a general demurrer was sustained upon the ground that the pleading did not state facts sufficient to constitute a cause of action, and the railroad company declining to plead further, its petition as amended was dismissed, and it appeals.

To re-state it briefly, the susbtance of the petition is that 41 coal diggers had brought and some 1,600 more would bring each for himself a separate suit in the quarterly court of Muhlenberg County to recover from the railroad company, for its alleged breach of duty in failing to furnish cars to the mine owners, sums less than $25. That they were brought pursuant to a conspiracy in the quarterly court, and for sums less than $25, for the purpose of preventing an appeal from any judgment that might be rendered in the quarterly court to the circuit court or this court. That to defend this multitude of suits in the quarterly court would cost the railroad company an enormous sum of money and it would have no redress or right to have reviewed by any other court the decision in the quarterly court. That the recovery in each case was sought upon precisely the same ground, and, therefore to avoid a multiplicity of suits and the large expense that would be incurred in defending them, a court of equity should restrain the prosecution of the pending suits and the institution of like suits in the quarterly court and require all of the claimants to come into the equity suit and set up their claims against the railroad company, so that the rights of all of them could be adjudicated in one suit.

Before taking up the legal questions presented a short statement of the reasons that induced the bringing of these suits by the coal diggers against the railroad company will be a helpful aid in understanding the nature of the controversy. A short while prior to the time these suits were brought by the coal diggers, we had before us the case of Illinois Central R. R. Co. v. River & Rail Coal & Coke Co., the opinion in which may be found in 150 Ky., 489. In that case the River & Rail Coal & Coke Co., a corporation operating a coal mine, brought suit against the railroad company to recover damages for its failure to furnish cars in which to transport the

coal produced at the mine, charging that as a result of such failure the coal company was compelled to suspend operations at its mine, to its damage in the sum sought to be recovered. In affirming the judgment of the circuit court awarding the coal company damages, we said that the railroad company, as a common carrier, was bound to provide reasonable facilities and appliances to carry the coal produced at the mine of the coal company, and that if it failed, upon reasonable request, to furnish a sufficient number of cars to enable the coal company to operate its mine, the coal company had a legal right, in an action instituted against the railroad company, to recover from it such damages as it sustained by the failure of the railroad company to perform its duty as a common carrier. This opinion was rested on the common law duty of a common carrier, and also on section 783 of the Kentucky Statutes, providing in part that "every company shall furnish sufficient accommodations for the transportation of all such passengers and property as shall within a reasonable time previous thereto offer or be offered for transportation at places established by the corporation for receiving and discharging passengers and freight," as well as on section one of the Act of Congress relating to interstate commerce.

After the decision in this case was handed down, the coal diggers, evidently believing that they, too, might have a cause of action against a common carrier that failed, without good excuse to furnish sufficient cars to enable the mine at which they worked to be operated, thereby depriving them of employment, brought these suits.

It may also be here noted that the quarterly court of Muhlenberg County had jurisdiction of the person of the defendant and the subject matter of the suits pending, the prosecution of which was sought to be enjoined, and the authority to render a binding judgment from which no appeal could be taken, as appeals do not lie from the judgments of the quarterly court where the amount in controversy is less than $25.

Nor is it disputed, nor could it be, that the plaintiffs in each of these suits pending in the quarterly court had the legal right to institute them in that court and the right to have that court hear and determine them, unless it be . that the exceptional circumstances surrounding these cases authorize a court of equity to interpose its jurisdiction and take from these plaintiffs and the

quarterly court the right to have them finally decided in that court.

But, notwithstanding the undoubted right of the plaintiffs to institute these suits in the quarterly court and the undoubted jurisdiction of the quarterly court under ordinary conditions to hear and determine them, it is insisted that the facts stated in the petition present a condition that authorizes a court of equity to stay the proceedings lawfully instituted and rightfully pending in a court that had jurisdiction and power to hear and determine the issues. The equitable jurisdiction of a court of chancery to thus interfere is invoked upon the theory that a court of equity has the inherent authority to stay proceedings in a common law court when there is such a multiplicity of actions against the same defendant arising on the same transaction as that to try each of them separately would subject the defendant to great expense, inconvenience and cost. It must be at once apparent, where there is no statutory regulation on the subject, that only an extraordinary condition of affairs will justify one court in taking from another court the right to hear and decide cases rightfully within its jurisdiction, and in taking from a party the privilege of bringing and prosecuting his suit in a court selected by himself and that has jurisdiction of the person of the defendant and of the subject matter of the action.

Every citizen who has a just cause has the right to appeal to that court established by law for the purpose of hearing it. This is a valuable right of which he should not be deprived unless the circumstances are very exceptional. Nor under ordinary conditions does the fact that a number of persons have separate, distinct demands of like character against the same defendant arising out of the same transaction interfere with this right or deny to any or all of them the privilege of bringing their individual suits in the same court and there prosecuting them to a conclusion.

There are, however, some well founded exceptions to these general rules, and these exceptions have themselves the merit that under their application the plaintiffs will not be unreasonably delayed in the assertion of their rights, or denied the privilege of having their controversy heard and determined by a court of competent jurisdiction. The most usual exception arises when there are a multitude of suits pending by differ-

ent parties against the same defendant, growing out of the same transaction, and the character of the asserted demands are such that the rights of the plaintiffs can be fully protected by having them all disposed of in one action, thus saving to the defendant the inconvenience, cost and expense of defending numerous, individual suits seeking to accomplish the same end. The reason upon which this exception, which we have only briefly stated, rests, finds further substantial support in the fact that it prevents the time of the court in which the cases are pending from being taken up with the trial of a multitude of like cases, to the detriment of the rights of other litigants who are entitled to a hearing, thus leaving the docket of the court in such condition as that justice may be administered without unreasonable delay to all parties having business in the court. The practice merely amounts to transferring cases from one court to another where all of them may be heard together with the same dispatch that would ordinarily attend the hearing of one case.

Pomeroy, in his work on Equity Jurisprudence, in Vol. 1, Secs. 243-275, discusses at length the reasons upon which rest the doctrine that jurisdiction exists in equity courts to prevent a multiplicity of suits. This learned author strongly advocates the exercise of this equitable jurisdiction, and in section 245 lays down four classes of cases in which, in his opinion, it ought to be exercised. These are "(1) Where, from the nature of the wrong, and from the settled rules of the legal procedure, the same injured party, in order to obtain all the relief to which he is justly entitled, is obliged to bring a number of actions against the same wrong-doer, all growing out of the one wrongful act and involving similar questions of fact and of law. To this class would belong cases of nuisance, waste, continued trespass, and the like. (2) Where the dispute is between two individuals, A and B, and B institutes or is about to institute a number of actions either successively or simultaneously against A, all depending upon the same legal questions and similar issues of fact, and A by a single equitable suit seeks to bring them all within the scope and effect of one judicial determination. A familiar example of one branch of this class is the case where B has brought repeated actions of ejectment to recover the same tract of land in A's possession, and A finally resorts to a suit in equity by which his own title is finally

established and quieted, and all further actions of eject-
ment by B are enjoined. (3) Where a number of per-
sons have separate and individual claims and rights of
action against the same party, A, but all arise from
some common cause, are governed by the same legal
rule, and involve similar facts, and the whole matter
might be settled in a single suit brought by all these per-
sons uniting as co-plaintiffs, or one of the persons suing
on behalf of the others, or even by one person suing
for himself alone. The case of several owners of dis-
tinct parcels of land upon which the same illegal assess-
ment or tax has been laid is an example of this class. (4)
Where the same party, A, has or claims to have some
common right against a number of persons, the estab-
lishment of which would regularly require a separate
action brought by him against each of these persons, or
brought by each of them against him, and instead there-
of he might procure the whole to be determined in one
suit brought by himself against all the adverse claim-
ants as co-defendants.''

The first and second and fourth of these rules have
been accepted by many courts as sound, but the correct-
ness of rule three, which is relied on by counsel for the
railroad company as authority for the relief sought de-
pends on the application of it. As applied to some
states of fact it is not open to objection, as to others it
would be. The right to enjoin a multiplicity of suits has
come up many times, and as illustrative cases from
other jurisdictions we may refer to Hale v. Allinson, 188
U. S., 56, 47 Law Ed., 380; City of Chicago v. Collins,
175 Ill., 445, 49 L. R. A., 408; Milwaukee Electric Ry. &
Light Co. v. Bradley, 108 Wis., 467; Wyman v. Bowman,
127 Fed. Rep., 257; McMullin's Admr. v. Sanders, 79
Va., 356; Mills v. New Orleans Seed Co., 65 Mass., 391,
7 Am. St. Rep., 671; Southern Steel Co. v. Hopkins, 157,
Ala., 175, 16 A. & E. Ann. Cases, 690.

In this State the subject is regulated in a general
way by section 25 of the Civil Code, which provides that
''If the question involve a common or general interest
of many persons, or if the parties be numerous, and it
is impracticable to bring all of them before the court
within a reasonable time, one or more may sue or de-
fend for the benefit of all.''

Adopting the idea embraced in this section as a basis,
we have in many cases recognized the jurisdiction of a
court of equity to prevent a multiplicity of actions by

requiring all of them to be heard and determined in one suit. Whaley v. Commonwealth, 110 Ky., 154; Commonwealth v. Scott, 112 Ky., 252; Sanders v. Herndon, 128 Ky., 437; Sutton v. Head, 86 Ky., 156; Stovall v. McCutcheon, 107 Ky., 577; McCann v. City, 23 Ky. L. R., 558; Gorley v. City, 23 Ky. L. R., 1782; Overton v. Overton, 123 Ky., 311.

Without extending this opinion with extracts from these cases, it may be said that in no one of them did the court approve the rule laid down by Pomeroy in class three as here sought to be applied, and we do not find it necessary in this case to give it our unqualified approval or to enter into a discussion concerning its soundness. We think the railroad company should have the relief prayed for, but not on the ground that the mere multiplicity of suits, without regard to their merit or want of merit, entitles it to this relief.

We think there is a broad distinction between invoking the jurisdiction of a court of equity to prevent a multiplicity of suits by different plaintiffs each having a separate, distinct meritorious cause of action, and invoking this jurisdiction to prevent a multiplicity of suits by plaintiffs who have not a legally enforceable demand against the defendant. And so if these coal diggers have not a meritorious demand against the defendant railroad company, there are many reasons why the jurisdiction of a court of equity should be invoked to require all their suits to be heard and determined in one action, that could not be invoked if each of them had a meritorious claim. If no one of the plaintiffs in the quarterly court is entitled to recover any amount against the defendant company in any of these suits, it would be an extraordinary hardship on the defendant to put it to the expense, inconvenience and cost of defending this multitude of suits in the quarterly court, and be an' intolerable condition of affairs if, after defending them to the best of its ability, a binding and unreviewable judgment should be rendered against it in each case for the amount claimed and it be compelled to pay the large sum that would be required to satisfy these various judgments, without an opportunity to have its rights determined by a court speaking with more authority than the quarterly court.

Having in mind the distinction that should be observed between the assertion of valid and groundless claims, we think that when a large number of cases

arising out of the same transaction or resting on the same common ground, have been instituted by different plaintiffs against the same defendant, and none of the plaintiffs have a legally meritorious or enforceable demand against the defendant, the jurisdiction of a court of equity may be invoked to the end that the rights of the parties, plaintiffs and defendant, may be heard and determined in one proceeding, thereby saving the defendant from the unjust burden of defending a number of separate suits. In this class of cases the exercise of the equitable jurisdiction referred to does not prejudice any substantial rights of the plaintiffs, because they have no substantial rights that can be prejudiced. It does not deny to them the right to seek lawful redress in any court of justice they may select, having jurisdiction to hear and determine the case, because they have not suffered any injury entitling them to have redress. It does not take away from them the right to have meritorious relief in a court established for the purpose of giving relief to parties deserving of it, because they have no right to the relief sought.

In Jordon v. Telegraph Co., 69 Kan., 140, the Kansas court had before it a question like this. A number of suits were brought before a justice of the peace to recover penalties from the telegraph company for an alleged violation of law by it. Thereupon the telegraph company instituted an equitable action to enjoin the prosecution of these suits. The court, in holding that the telegraph company was entitled to the relief sought, put its decision upon the ground that the suits brought before the justice of the peace were not upon legally enforceable demands, saying:

"Surely it would be inequitable to permit parties to proceed seriatim to the trial of 542 baseless and vexatious actions for the purpose of accomplishing no beneficial result. The mere multiplicity of actions might not constitute ground for the relief here sought, though we are not sure that instances are found where courts have interfered to stay proceedings upon all but one of a like series of actions until the merits may be determined by the trial of that one. However this may be, certain it is that if the actions are not only numerous but vexatious and groundless, as here alleged, equity will promptly intervene." See also Southern Pacific Co. v. Robinson, 132 Cal., 408.

With this expression of opinion as to the character of cases in which the jurisdiction of a court of equity may be invoked to enjoin the prosecution of a large number of like suits until the rights of the parties to the relief sought in the individual suits can be adjudicated in one action, the only remaining question is, did the plaintiffs, or any of them, in the quarterly court suits, have a valid and enforceable demand against the railroad company on the grounds upon which their suits were based? We think not.

In the River & Rail case, supra, the action was brought by a mine owner who had requested cars, thereby creating an obligation on the part of the railroad company to furnish them unless prevented for good reason. Out of this request arose the implied contract on which the right of recovery on behalf of the coal company rested, and the opinion was confined to a consideration of the right of a mine owner, under these circumstances, to maintain such an action. The question here presented was not alluded to in that case, nor has it ever been, so far as our investigation goes, considered by this court. To put it in simple form, the question is this: Can an employe of a party maintain an action against a common carrier to recover damages that will compensate him for the time he has lost from his employment on account of the failure of the common carrier to perform its duty in furnishing cars to the party by whom he is employed? It is obvious that if an employe, under the circumstances stated, can maintain an action, so could any other person who has suffered injury by the failure of the carrier to discharge a duty that it owed a party who was unable on account of this failure to comply with his contract or keep his engagement with the party seeking relief.

Thus it will readily appear that if actions like this may be maintained, there is at once opened up an illimitable field of litigation. The merchant who suffered loss because of the delay in getting his flour from the miller, who was unable to furnish it because the common carrier negligently failed to deliver to him the wheat out of which the flour was to be made, might sue the carrier for his loss of profits. Every carpenter, bricklayer and other mechanic who was kept out of employment by the negligent failure of the common carrier to furnish in due time material to his employer, would have a cause of action against the carrier. A

like cause of action would exist in favor of every laborer in every conceivable class of employments who was prevented from earning his daily wage for any length of time by the negligent failure of the carrier to furnish to his employer the material necessary to operate or carry on his business. The owner of every mill, factory and other establishment that suffered loss on account of the inability of the mine owner, with whom he had a contract, to supply him with coal to run his plant, could sue the common carrier if it caused the mine owner to be delayed in his shipments of coal. Every live stock trader, broker or other trader in goods or chattels, whose contract rights with a shipper or consignee of freight were impaired by the failure of the consignor or consignee to meet his engagements on account of some breach of duty on the part of the carrier, could sue it and recover in damages the loss he sustains. And so almost without limit the startling possibilities of this new and interminable source of litigation might be illustrated, but the examples we have mentioned are sufficient to show that the mass of litigation it would give rise to is so astounding that no court, unless compelled to do so by some controlling and mandatory statute, should approve it.

The argument, however, is made that the statute heretofore cited and under which a recovery was allowed in the River and Rail case is broad enough to authorize a recovery by every person who has been injured by a common carrier's breach of duty, and hence the coal diggers, under the averments of their petitions, had enforceable demands. We do not think so. It may be true that the statute imposes on the carrier the duty required for the benefit in part of the public, but the statute only becomes operative when some person having a contractual relation with the carrier has been injured by the breach of duty, and the right of recovery is confined to such person. In other words, the statutory duty, to be the basis of an action, under circumstances like those we are considering, must rest on a contract express or implied made between the complaining party and the carrier.

It is said, however, that there are many violations of statutory provisions not arising out of contract relations that may be made the basis of a civil action by any person injured by the violation. This is so. As one example we may mention the civil liability of a railroad company for failing to give the statutory signal at

grade crossings. But a violation of the statute under consideration requiring common carriers to furnish transportation necessarily springs from the breach of a contract, express or implied. The carrier cannot know what cars are needed by a shipper until he has made a request for them. It can only know the number of cars that are needed at any point on its line of road to supply at a given time the demands of trade through requests made for cars. Unless a request is made the carrier is under no duty to furnish cars at any particular place. But when a request is made, then the law puts on the carrier the duty of complying with it, and there at once comes into existence a contract implied by law that the carrier will furnish to the shipper the cars requested, and if it fails to do so without lawful excuse, the shipper, on this implied contract, may have his action in damages. This was the ground upon which a recovery was allowed in the River and Rail case.

The public whose rights may be affected by their business relations with the shipper are of course concerned in the carrier's performance of its duty to the shipper, but they must look to him to put in motion such action as will compel the carrier to, discharge its duty in so far as the mere civil liability of the carrier is concerned. Little Rock & Fort Smith R. Co. v. Conaster, 61 Ark., 560. The general rule in reference to what parties may maintain an action to recover damages growing out of a contract relation are thus stated in 9 Cyc., 372:

"The obligation and duty arising out of a contract are due only to those with whom it is made; and, therefore, an action for the breach of a contract can as a rule be brought only by one who is a party to the contract. The reason for the rule that privity of contract is necessary to an action founded on a breach of contract is that otherwise a man's responsibility for not carrying out his agreement with another would have no limit; there would be no bounds to, actions if the ill effect of the failure of a man to perform his agreement could be followed down the chain of results to the final effect." And this rule is supported by the great weight of authority.

For these and other reasons that might be suggested, we think the coal diggers had no enforceable demand against the carrier growing out of its failure to furnish

to the mine owner sufficient cars to enable him to operate his mine.

There is no pretense in this case that these coal diggers had any contract relations with the railroad company or that it was under a contract duty to furnish them any cars or that it had failed or refused to comply with any request made by them. This being their situation, the ingredient of the contract relation indispensable to give them a cause of action is lacking. There may be a class of cases in which a stranger to a contract might have a cause of action against a party who violated some statutory duty in connection with the performance of a contract, but the case we have does not fall within such a class.

In disposing of this case we have accepted as true the averments of the petition as amended, as all of its averments were confessed by the demurrer. We might also add that the charge of conspiracy had little influence in causing us to reach the conclusion stated, our decision being chiefly rested on the ground that a court of equity should interpose to prevent a multiplicity of suits when the plaintiffs have no meritorious cause of action or legally enforceable demands against the defendant.

We also think that it may be assumed that the coal diggers stated their full case in the petitions filed in the quarterly court and so the lower court will enter a judgment perpetually enjoining the plaintiffs in the quarterly court suits from the further prosecution of such suits, and provide that all or any of them, or others having like claims, may, if they so desire, present them for hearing and determination in this suit. No judgment for costs will go against Rice, judge of the quarterly court or against the attorneys, Clark, Hardison, Denny and Wilkins.

Wherefore, the judgment is reversed, with directions to proceed in conformity with this opinion, the whole court sitting.